UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**LINDA YBARRA**,                        §
                                         §
        *Plaintiff*,                     §
VS.                                      §        CIVIL ACTION 4:13-CV-3720
                                         §
**CAROLYN W. COLVIN,**                   §
Acting Commissioner of Social            §
Security Administration,                 §
                                         §
        *Defendant*.

## MEMORANDUM AND ORDER

In this case seeking judicial review of the denial of Social Security benefits, Plaintiff Linda Ybarra ("Ybarra") filed a Motion for Summary Judgment pursuant to 42 U.S.C. § 405(g).  Doc. 15.  Defendant Carolyn W. Colvin ("Commissioner"), Acting Commissioner of Social Security, filed her own Motion for Summary Judgment and Brief in Support.  Doc. 17.  The parties have consented to have this Court conduct all proceedings, pursuant to 28 U.S.C. § 636(c).  Doc. 11.  Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court orders that Ybarra's Motion for Summary Judgment is **DENIED** and that the Commissioner's Motion for Summary Judgment is **GRANTED**.

## BACKGROUND

Ybarra is a 47-year old woman with a fourth-grade education.  Tr. at 31.  She has past relevant work experience as a housekeeper.  Tr. at 33.  Ybarra suffers from the severe impairments of diabetes mellitus, status post right 3rd toe amputation, and

1

vascular disease.  Tr. at 16-17.  On April 28, 2011, Ybarra filed a Title II application for a period of disability and disability insurance and a Title XVI application for supplemental security income benefits.  Tr. at 40.  Ybarra alleges her disability began on April 8, 2011. Tr. at 94.

### Medical Evidence

Ybarra was admitted to Ben Taub General Hospital on April 7, 2011, after a three-week long history of an infected right third toe.  Tr. at 199.  Her foot was red, swollen, and it was painful to walk.  Tr. at 202.  Ybarra was diagnosed with "[r]ight third toe wet gangrene, osteomyelitis, [and] [n]ew onset DM."  Tr. at 199.  The toe was amputated on March 8, 2011.  Tr. at 200.  Post-amputation, Ybarra's wound was purulent and she experienced intermittent fevers and elevated levels of white blood cells.  *Id.*  A debridement of the wound was performed on April 15, 2011.  *Id.*  On April 20, 2011, Ybarra was discharged from the hospital in "stable" condition with her pain "well controlled."  Tr. at 200-01.  She was instructed to return to the hospital if she developed fever, nausea, increased pain or redness, drainage, or warmth around the incision site. Tr. at 200.

On May 9, 2011, Ybarra went for a post-operative follow-up visit with M. Locke Kendrick, M.D.  Tr. at 198.  Dr. Kendrick noted that Ybarra was diabetic.  *Id.*  The wound was characterized as "healing well with no signs of infection."  *Id.*  Dr. Kendrick reported that Ybrarra was "[a]ble to ambulate with [an] off loading shoe and cane" and that her pain was "well controlled with medication, not constant pain."  *Id.*

On September 26, 2011, Ybarra went to Houston Northwest Medical Center complaining of back pain. Tr. at 232, 236. Ybarra also complained of intermittent swelling in her right foot since the amputation, but stated that there was no current swelling. Tr. at 236. It was noted that she "ambulated slowly" but "without assistance," and that she was not a "fall risk." Tr. at 236-37. Ybarra was diagnosed with acute mid back pain, a urinary tract infection, and possible T7/T8 discitis. Tr. at 233, 240. The location of the back pain was described as the "left subscapular area, right subscapular area and thoracic area." Tr. at 237. A chest CT revealed "endplate irregularity at T7-T8 with mild paraspinal soft tissue prominence and possible epidural thickening for which discitis cannot be excluded. Correlate with MRI [of the] thoracic spine with and without contrast." Tr. at 246. Ybarra was given Ketorolac, Ceftriaxone Sodium, Morphine, Methylprednisolone, Zofran, Solu-Medrol, Rocephin, and Toradol while at the hospital. Tr. at 233-34. She was discharged pain-free that same day and prescribed Flexiril, Levaquin, and Ultram. Tr. at 233, 238, 240.

Ybarra visited Orlando H. Rivera, D.P.M. (Doctor of Podiatric Medicine), on July 31, 2012 complaining of right foot pain. Tr. at 253. Ybarra was noted to have "[d]iminished muscle strength of all prime movers of the foot and ankle with diminished muscle tone and symmetry bilateral," [m]oderate to severe Hallux Abducto Valgus Deformity Right foot," "[r]igid hammertoe deformities noted on the Right foot [digits] 2nd and 4th, with plantarflexed and very tender metatarsals 2-5," and "Peripheral Neuropathy bilateral feet." *Id.* Ybarra was given a prescription for custom molded shoes and inserts. *Id.* One month later, Lower Extremity Arterial and Venous Doppler testing

revealed "mild arterial occlusive disease seen in both lower extremities," but "no evidence of acute deep vein thrombosis."  Tr. at 253, 255-56.

### Application for Benefits and ALJ Hearing

On April 28, 2011, Ybarra applied for social security disability insurance benefits ("SSDI") and supplemental security income benefits ("SSI") claiming a disability onset date of April 8, 2011.  Tr. at 40, 94.  Her application was initially denied on July 18, 2011, and again upon reconsideration on December 5, 2011.  Tr. at 44, 53.  Ybarra requested a hearing before an administrative law judge ("ALJ") on December 13, 2011, which was granted.  Tr. at 60, 62.

The hearing took place on August 31, 2012 before ALJ Harry L. Williams, Jr.  Tr. at 27.  The ALJ heard testimony from Ybarra and impartial vocational expert ("VE") Vicky Colenburg.  Tr. at 27, 30-39, 89.  Ybarra testified that she only completed the fourth grade before she was "out in the streets."  Tr. at 31.  She also stated that she has "some problems" reading and writing, but can write her name and read street signs.  Tr. at 31-32.  Ybarra testified about her prior work running her housekeeping business.  Tr. at 33.  Ybarra stated that it is difficult for her to work because it is hard to "read the board, take orders, [or] count money."  *Id.*  Ybarra testified that she has diabetes, an amputated toe, and that recently the toes on her right foot have been "crumpled up [and] all together" such that she is unable to straighten them out.  Tr. at 34.

Ybarra testified that she could walk fifty to a hundred feet before her foot will hurt, that her foot hurts all the time, and that it hurts worse when she walks.  Tr. at 35.  She reported that sitting down "sometimes" bothers her because she "really want[s] to

4

move around but [cannot]" because her "back starts hurting."  *Id.*  Ybarra stated that she

has an eleven-year old daughter that she cares for and that she goes to Church on

Sundays.  Tr. at 32, 35-36.   However, Ybarra also testified that she "hardly" goes

shopping because she can "hardly walk."  Tr. at 36.

VE Colenburg testified that Ybarra's past work as a housekeeper is light, unskilled

work.  Tr. at 36.  In response to questioning by the ALJ, the VE testified that a person

limited to two-to-three hours per day of standing and walking in an eight-hour day would

be unable to perform Ybarra's past work as a housekeeper.  Tr. at 36-37.  The ALJ then

asked the VE to assume a person of the same age, education, and work history as Ybarra

who: was limited to two-to-three hours per day of standing and walking; needed a cane

for balance; could sit for six or more hours per day if given the ability to frequently

change position; could lift ten pounds frequently and twenty pounds occasionally; could

occasionally climb ramps, stairs, stoop, kneel, and crouch; but could never crawl or climb

ropes, ladders, or scaffolding.  Tr. at 37.  The VE responded that such a person could

perform the light, unskilled occupations of parking lot cashier and storage facility rental

clerk, and the sedentary occupation of order clerk.  Tr. at 37-38.  The VE also testified

that if standing and walking were reduced to only one-to-two hours per day, such a

person would be unable to work as a parking lot cashier or storage facility rental clerk,

but could perform the sedentary work as an order clerk.  Tr. at 38.

### *The ALJ Decision*

After the hearing, the ALJ issued a decision that Ybarra was not disabled from

April 8, 2011 through the September 21, 2012 decision date.  Tr. at 14.  The ALJ found

that Ybarra had acquired sufficient quarters of coverage to remain insured through December 31, 2014.  *Id.*  The ALJ also found that Ybarra had not engaged in substantial gainful activity since her alleged onset date, and suffers from the severe impairments of diabetes mellitus, status post right 3rd toe amputation, and vascular disease.  Tr. at 16-17. However, the ALJ found that none of Ybarra's impairments, alone or in combination, met or medically equal the severity of a listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. at 17.  In reaching his conclusion, the ALJ specifically considered listings pertaining to the musculoskeletal system (1.05), the cardiovascular system (4.11 and 4.12), and the effects of Ybarra's diabetes.[1]  *Id.*

The ALJ evaluated Ybarra's residual functional capacity ("RFC") and found that she had the RFC to perform light work limited by: three hours per day of standing and walking; the use of a cane for balance; six hours per day of sitting if given the option to change positions at will; lifting ten pounds frequently and twenty pounds occasionally; occasionally climbing ramps, stairs, stooping, kneeling, and crouching; but never crawling or climbing ropes, ladders, or scaffolds.  Tr. at 17.  Based on this RFC, Ybarra was found unable to perform her past relevant work experience as a housekeeper. Tr. at 19.  The ALJ determined, however, that there were jobs existing in significant numbers in the local and national economies that Ybarra could perform.[2]  Tr. at 20.

---

[1] Diabetes is not included as a separate disability listing as "impairments that result from endocrine disorders [are evaluated] under the listings for other body systems."  20 C.F.R. § 404 Subpart P, Appendix 1 § 9.00B.

[2] Parking lot cashier (DOT 211.462-010, 600 local jobs and 125,000 nationwide), storage facility rental clerk (DOT 295.367-026, 800 local jobs and 185, 000 nationwide), and order clerk (DOT 209.567-014, 1,100 local jobs and 185,000 nationwide).

Accordingly, the ALJ held that Ybarra was not disabled from April 8, 2011 through the September 21, 2012 decision date. Tr. at 21.

Ybarra requested a review of the ALJ's decision on September 21, 2012 and submitted additional evidence, which the Appeals Council considered and made a part of the record. Tr. at 1, 5. The Appeals Council denied review on October 10, 2013. Tr. at 1. Ybarra now appeals to this Court and files a motion for summary judgment arguing that the ALJ's decision was in error.

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008); FED. R. CIV. P. 56(a), (c); *Celotex Corp.*, 477 U.S. at 322-23. "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005) (internal citations and quotation marks omitted).

7

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision that a claimant is not entitled to benefits is governed by 42 U.S.C. § 405(g).  *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002).  This review is limited to two issues: "(1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard."  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)

Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); *Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007).  A finding of substantial evidence supporting the Commissioner's decision must "do more than create a suspicion . . . of the fact[s] to be established," while a finding of no substantial evidence is only appropriate if there is a conspicuous absence of  "credible evidentiary choices or medical findings" to support the decision.  *Richard ex rel. Z.N.F. v. Astrue*, 480 F. App'x 773, 776 (5th Cir. 2012); *Stringer v. Astrue*, 465 F. App'x. 361, 363-64 (5th Cir. 2012).  In applying this standard, the court "may not reweigh the evidence or substitute our judgment for that of the Commissioner."  *Audler*, 501 F.3d at 447.

## ANALYSIS

### A. Statutory Basis for Benefits

Ybarra applied for both Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits.  SSDI benefits are authorized by Title II

of the Social Security Act.   The disability insurance program provides income to individuals who are forced into premature retirement, provided they are both insured and disabled.   *See* 42 U.S.C. § 423(a).   SSI benefits are authorized by Title XVI of the Social Security Act.   This program assures a minimal level of income to the aged, blind, and disabled to assure that their standard of living does not fall below the poverty line. 20 C.F.R. § 416.110; *see also* 42 U.S.C. § 1381.   Eligibility for SSI is based upon proof of disability and indigence.   *See* 42 U.S.C. § 1382.   "The law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI."   *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *see also* 42 U.S.C. §§ 423(d), 1382c(a)(3)(A).

**B. Determination of Disability**

The Social Security Act defines the term "disability" to mean the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).   A claimant is disabled "only if his physical or mental impairment[s] are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."   42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis of a disability claim to determine whether: (1) the claimant is presently working; (2) the claimant has a severe

9

impairment; (3) the impairment meets or equals an impairment listed in Appendix 1 of the Social Security Regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.  *See Audler*, 501 F.3d at 447-48; 20 C.F.R. § 404.1520(a).  If, at any step, a conclusive disability determination can be made, the inquiry ends.  *Id*.  The burden of proving disability initially lies with the claimant, but shifts to the Commissioner to show that the claimant can perform other substantial work in the national economy.  *See Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).  Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut this finding.  *See Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

The ALJ found Ybarra not disabled at step five.  Tr. at 20.   The ALJ concluded that although Ybarra could no longer perform her past relevant work, there were jobs available in the economy that she could perform.  Tr. at 20.

Ybarra asserts a series of errors by the ALJ that she contends entitle her to summary judgment.  The Court addresses her arguments below.[3]

## C. The ALJ Correctly Determined Ybarra's Severe Impairments

Ybarra challenges the second step in the Commissioner's disability determination, which requires the factfinder to decide whether a claimant's impairment is "severe" irrespective of age, education, or work experience.  *See* 20 C.F.R. §§ 404.1520(a)(4)(ii),

---

[3] The Court finds Ybarra's motion for summary judgment briefing to be repetitive, at times unsupported by citation to the case law or record, and generally unhelpful to an orderly assessment of her claims.   Nevertheless, the Court has attempted to address each of her arguments in turn.

404.1520(c).   The ALJ found that Ybarra suffers from the "severe" impairments of diabetes mellitus, status post right 3rd toe amputation, and vascular disease.   Tr. at 16-17. Ybarra complains that the ALJ should have found the additional "severe" impairments of back pain, vascular disease,[4] extremity weakness, and skeletal deformities.   The Court disagrees.

"[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (alterations in original); *Henderson v. Colvin*, 520 F. App'x 268, 274 (5th Cir. 2013).   All impairments must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).   In the applicable law section of his decision, the ALJ correctly set forth the *Stone* standard stating, "[a]n impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work."   Tr. at 15.   The ALJ then applied *Stone* and found diabetes mellitus, status post right 3rd toe amputation, and vascular disease as "severe" impairments.   Tr. at 16-17.   By implication, all other asserted impairments were found "not severe."

---

[4] Contrary to Ybarra's arguments, the Court notes that the ALJ expressly found that Ybarra suffers from the "severe" impairment of vascular disease.   Tr. at 17.

*Back Pain*

Although Ybarra asserts that the ALJ should have found her back pain to be a "severe" impairment, the objective medical evidence does not support such a conclusion. The only "acceptable clinical and laboratory diagnostic techniques" demonstrating any impairment of Ybarra's back is a September 26, 2011 chest CT, which revealed "possible T7/T8 discitis." Tr. at 240, 246. Importantly, it was noted that these results should be, "[c]orrelate[d] with MRI [of the] thoracic spine with and without contrast." Tr. at 246. There is no record that a MRI was performed or that Ybarra ever sought any additional treatment for her back. The only other evidence demonstrating an impairment of Ybarra's back was her testimony that while sitting, "I really want to move around but I can't, then my back starts hurting." Tr. at 35. The Court notes that the ALJ specifically addressed this concern in his RFC by requiring that Ybarra have "the option to frequently change positions at will." Tr. at 17.

Ybarra bears the burden of establishing any severe impairment. *See Henderson*, 520 F. App'x at 275. While "[t]he ALJ must consider subjective evidence of pain, [] it is within his discretion to determine the pain's disabling nature." *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003) (quoting *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991)). The Court finds that because Ybarra lacks sufficient medical evidence demonstrating a "severe" impairment of her back, the ALJ correctly applied the *Stone* standard to determine that Ybarra's asserted back pain would have no more than a minimal effect on her ability to work. Accordingly, substantial evidence supports the conclusion that Ybarra's back pain is not a "severe" impairment.

*Extremity Weakness and Skeletal Deformity*

Ybarra also claims that the ALJ should have found the additional "severe" impairments of extremity weakness and skeletal deformity.  The Court disagrees.  While Ybarra cites to no evidence in her brief supporting this contention, the Court notes that there is some medical evidence that Ybarra suffered from extremity weakness and skeletal deformity.  For example, Dr. Rivera noted "[d]iminished muscle strength of all prime movers of the foot and ankle with diminished muscle tone and symmetry bilateral," [m]oderate to severe Hallux Abducto Valgus Deformity Right foot," "[r]igid hammertoe deformities noted on the Right foot [digits] 2nd and 4th, with plantarflexed and very tender metatarsals 2-5," and   "Peripheral Neuropathy bilateral feet."   Tr. at 253.  However, contrary to Ybarra's arguments, the ALJ specifically discussed these impairments in his opinion limiting Ybarra to three hours per day of standing or walking with the additional requirement that she be allowed to utilize a cane for balance.  Tr. at 17, 18.

Furthermore, the Court finds that there was no need for the ALJ to describe extremity weakness and skeletal deformity as separate "severe" impairments.  "[T]he examining ALJ must analyze the disabling effect of both the claimant's ailments individually and for their cumulative impact."  *Beck v. Barnhart*, 205 F. App'x 207, 211 (5th Cir. 2006); *see also* 42 U.S.C. § 423(d)(2) ("If the Commissioner [] does find a medically severe combination of impairments, the combined impact of the impairments shall be considered throughout the disability determination process.").  Here, the ALJ considered the combined effects of these conditions in conjunction with Ybarra's toe

amputation.  Tr. at 18.  The Court finds that there is substantial evidence supporting the conclusion that Ybarra's extremity weakness and skeletal deformity are not "severe" impairments.

### D. An Additional Expert Medical Opinion was not Required

Ybarra also argues that the ALJ should have consulted an additional medical expert to opine about Ybarra's RFC and potential qualification under an Appendix 1 listing.  In a similar argument, Ybarra claims that lack of an additional medical expert opinion constitutes reversible error for a failure to adequately develop the record.  The Court finds these arguments unpersuasive.

### *An Updated Medical Opinion Would not have Found Ybarra Disabled*

Ybarra, relying upon the opinion in *Brister* and Social Security Regulation 96–6p ("SSR 96-6p"), argues that the ALJ has a non-discretionary duty to obtain an updated medical opinion regarding the cumulative effects of a claimant's impairments "if the evidence *may* change the State agency medical findings. . ."  Pl. Br. at 10 (emphasis in original); *see also Brister v. Apfel*, 993 F. Supp. 574, 577 n.2 (S.D. Tex. 1998); *and* SSR 96-6p, 1996 WL 374180, (July 2, 1996).  However, as numerous courts have held, the Social Security Regulations and *Brister* do not create such a duty.[5]  Citing to SSR 96-6p,

---

[5] The Court notes that Plaintiff's counsel, Victor N. Makris, has previously asserted this same or similar argument to Texas courts without success. *Cf. Alix v. Colvin*, No. 4:12-CV-01493, 2013 WL 5785551 (S.D. Tex. Aug. 26, 2013) (Hanks, J.); *Reliford v. Colvin*, No. H-12-1850, 2013 WL 1787650 (S.D. Tex. Apr. 25, 2013); *Brooks v. Astrue*, No. 4:09-CV-2806, 2011 WL 1231605 (S.D. Tex. Mar. 31, 2011) (Hanks, J.); *Copenhaver v. Astrue*, No. A-09-CA-838-SS, 2011 WL 891617 (W.D. Tex. Mar. 11, 2011); *Johnson v. Astrue*, No. H-10-422, 2010 WL 5437262 (S.D. Tex. Dec. 27, 2010); *Lottinger v. Astrue*, No. 4:09-CV-971, 2010 WL 744245 (S.D. Tex. Feb. 26, 2010); *Macias v. Astrue*, No. 4:08-CV-3681, 2010 WL 376268 (S.D. Tex. Jan. 26, 2010).

the Court in *Brister* held that "when additional medical evidence is received that *in the opinion of the ALJ* may change the State agency medical or psychological consultant's findings, an updated medical opinion regarding disability is required."  *Brister*, 993 F. Supp. at 577 n.2 (emphasis in original); *see also* SSR 96-6p at *4.

Here, Ybarra points to evidence "submitted on or after December 1, 2011" that required the ALJ to seek an additional State agency medical consultant ("SAMC") opinion.  However, Ybarra references no evidence supporting her assertion that she "might very well have produced a Listing equivalence," and identifies no specific error in the ALJ's assessment of her cumulative impairments and resulting RFC.  Instead, Ybarra generally asserts that the ALJ impermissibly "substituted his own opinion for that of a medical expert."  While an ALJ "*may* also ask for and consider opinions from medical experts on the nature and severity of your impairment(s) and on whether your impairment(s) equals the requirements of [a listing]," an ALJ "[is] not bound by any findings made by State agency medical or psychological consultants."   20 C.F.R. §§ 404.1527(e)(2)(i), (iii) (emphasis added); *see also Dominguez v. Astrue*, 286 F. App'x 182, 186 (5th Cir. 2008) ("the use and consideration of medical expert testimony is solely within the discretion of the ALJ.").  The determination of whether or not a claimant satisfies the conditions of a listing is "one reserved to the Commissioner."  *See* 20 C.F.R. § 404.1527(d)(2); *see also Cain v. Barnhart,* 193 Fed. App'x 357, 361 (5th Cir.2006); *and* SSR 96-6p at *3.  Accordingly, because the ALJ did not believe this additional evidence would disturb his findings, the ALJ was not required to obtain an updated medical opinion.  *See Brister*, 993 F. Supp. at 577 n.2.

***An Updated Medical Opinion was Unnecessary to Fully Develop the Record***

Similarly, Ybarra argues that the lack of additional medical expert opinion constitutes a failure to adequately develop the record.  The Court disagrees.  An ALJ "has a duty to fully and fairly develop the facts relative to a claim for disability benefits." *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000).  However, reversible error for an ALJ's failure to develop the record requires a showing of prejudice.  *Id.*  Therefore, Ybarra must "adduce[] evidence that might have altered the result."  *Id.*  Ybarra has produced no such evidence.

Although Ybarra asserts that "[c]onsultation of a qualified ME at the ALJ hearing would likely have resulted in a different outcome," she provides no argument or citation in support of this assertion.  *See Jones v. Astrue*, 691 F.3d 730, 735 (5th Cir. 2012) *cert. denied,* 133 S. Ct. 953, 184 L. Ed. 2d 728 (U.S. 2013) ("A mere allegation that additional beneficial evidence might have been gathered had the error not occurred is insufficient to meet this burden.").  Furthermore, while Ybarra has provided evidence that indicates she suffers from additional foot ailments, she has failed to explain how these ailments would have altered the ALJ's RFC assessment or otherwise impacted her ability to work.  *See Gonzalez v. Barnhart*, 51 F. App'x 484 (5th Cir. 2002) (finding no prejudice where claimant presented no evidence or argument of why she could not perform her past relevant work).

Contrary to Ybarra's contention, the ALJ did not accept the SAMC's opinion without question or consideration.  For example, the SAMC opined that Ybarra could stand or walk "about 6 hours in an 8-hour workday."  Tr. at 224.  After considering all of

the evidence, the ALJ found that Ybarra could only stand or walk for "3 hours in an 8 hour day."  Tr. at 17.  The Court finds that Ybarra has failed to provide any evidence which might have altered the Commissioner's determination.  Accordingly, the facts of Ybarra's claim were fully and fairly developed and the ALJ was not in error.

**E. The Medical–Vocational Guidelines do not Direct a Conclusion of Disability**

Ybarra contends that because she is illiterate, Rule 201.17 of the Medical–Vocational Guidelines ("Grid") found in 20 C.F.R. § 404 Subpart P, Appendix 2 directs a finding of disability and the ALJ erred in finding otherwise.  The Court finds this argument unpersuasive.

Grid Rule 201.17 directs a conclusion of "disabled" for younger individuals aged 45-49, who are illiterate or unable to communicate in English, have previous unskilled work experience, and have a maximum sustained work capability limited to *sedentary work*.[6]  20 C.F.R. § 404 Subpart P, Appendix 2 § 201.17.  When a claimant's vocational factors and RFC coincide with the criteria of a particular rule, the Grid directs a conclusion of whether or not the individual is disabled.  *Id.* § 200.00(a).  However, if a claimant's vocational factors and RFC do not exactly coincide with the criteria of a particular rule, the Grid does not direct a conclusion of disability.  *See id.* § 200.00(d).

> If an individual's specific profile is not listed within this appendix 2, a conclusion of disabled or not disabled is not directed.  Thus, for example, an individual's ability to engage in substantial gainful work where his or her residual functional capacity falls between the ranges of work indicated in the rules (*e.g.*, the individual who can perform more than light but less than medium work), is

---

[6] While there is evidence of limited literacy in Ybarra's application, the ALJ made no express finding on the subject.  However as discussed *infra*, Grid Rule 201.17 does not apply in this case regardless of Ybarra's ability to read and write.

decided on the basis of the principles and definitions in the regulations, giving consideration to the rules for specific case situations in this appendix 2.

*Id.*; *see also* SSR 83-12, 1983 WL 31253, at *2-3 (January 1, 1983); *Moore v. Soc. Sec. Admin.*, 153 F. App'x 945, 947 (5th Cir. 2005).

Here, the ALJ found that Ybarra could perform *light work*, subject to the restrictions listed in her RFC.  Accordingly, the Court finds that Rule 201.17, which requires that a maximum sustained work capability limited to *sedentary work*, is inapplicable.  When the claimant suffers from additional limitations that make the Grid inapplicable, "the Commissioner must rely upon the services of a vocational expert or similar evidence."  *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000).  Here, the ALJ found Ybarra suffered from both exertional and nonexertional limitations on the full range of light work.  Tr. at 17, 20.  Accordingly, the Court finds that the ALJ correctly relied upon vocational expert testimony to aid in his decisionmaking, resulting in a RFC and disability finding supported by substantial evidence.  *See Carey*, 230 F.3d at 145.

## F. The ALJ's Opinion is Consistent with SSR 96-8p

Ybarra contends that the ALJ "failed to describe how the evidence supported each conclusion, and failed to discuss [Ybarra's] ability to perform sustained work activity in an ordinary work setting on a regular and continuing basis."  The Court finds this argument unpersuasive.  SSR 96-8p requires that an RFC assessment include "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)."  SSR 96-8P, 1996 WL 374184, at *7 (July 2, 1996); *see also Bryant v.*

*Astrue*, 272 F. App'x 352, 356 (5th Cir. 2008).  Furthermore, the ALJ's RFC assessment "must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis. . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record."  *Id.*

Here, Ybarra simply quotes portions of SSR 96-8p and argues that the ALJ did not comply.  Ybarra provides no indication of how the ALJ's conclusions were deficient, nor does she cite any factual evidence that the ALJ did not consider.  The Court notes that the ALJ thoroughly discussed the evidence upon which his RFC was based: the objective medical evidence; Ybarra's testimony; and the opinion of Dr. Rivera, Ybarra's examining physician.  Tr. at 18-19.   The ALJ explained that he gave "little weight" to Dr. Rivera's limitations assessment because it was unsupported by the evidence and "lack[ed] credibility because of its broad brush."  Tr. at 19.  Further, the ALJ specifically addressed Ybarra's ability to lift, carry, stand, walk, sit, climb, crawl, stoop, kneel, and crouch in his RFC.  Tr. at 17.  He also addressed the frequency with which Ybarra could perform the activities described during an eight hour workday, as required by SSR 96-8p.  *Id.*  While Ybarra may disagree with the ALJ's conclusion, the ALJ's opinion sufficiently referenced the supporting evidence and appropriately explained the rationale for his decision.  Accordingly, the Court finds that the ALJ's determination of Ybarra's RFC was in accordance with SSR 96–8p and supported by substantial evidence.  *See Bryant*, 272 F. App'x at 357 (finding ALJ's discussion of residual abilities and evidentiary basis of findings consistent with narrative requirement of SSR 96-8p).

## G. The ALJ Properly Considered all Record Evidence

Ybarra next argues that the ALJ "failed to give meaningful consideration" to a number of her medical conditions.  In support of this argument, Ybarra contends that an ALJ errs by "simply rejecting favorable evidence without explaining specifically why he was rejecting it."  *Kelly v. Chater*, 952 F. Supp. 419, 426 (W.D. Tex. 1996) (citing *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994).  However, contrary to Ybarra's arguments, the holding in *Kelly* does not require the ALJ to follow formalistic rules in his articulation and specifically cite each and every piece of medical evidence considered in all cases.[7] *See Herrera v. Comm'r of Soc. Sec.*, 406 F. App'x 899, 905 (5th Cir. 2010) (quoting *Falco*, 27 F.3d at 164); *and Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005) (citing *Falco*, 27 F.3d at 164).  In this case, for the reasons discussed below, the Court finds there is substantial evidence supporting the ALJ's opinion and that the ALJ gave "meaningful consideration" to all of Ybarra's medical conditions.

## H. Substantial Evidence Supports the ALJ's Decision

Ybarra advances a number of arguments asserting, either directly or indirectly, that the ALJ's decision is unsupported by substantial evidence.  The Court disagrees.

---

[7] For example, the Fifth Circuit requires an ALJ to offer an explanation when rejecting the opinion of a treating physician.  *See, e.g.*, *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). *See also Falco*, 27 F.3d at 163 ("when the evidence clearly favors the claimant, the ALJ must articulate reasons for rejecting the claimant's subjective complaints of pain.").  However, the relevant portions of *Falco* addressed the ALJ's credibility assessment and did not discuss the rejection of "favorable evidence" as a whole.  *Falco* explicitly declined to adopt the Third Circuit's rule that "an ALJ must articulate specifically the evidence that supported his decision and discuss the evidence that was rejected."  *Cf. Falco*, 27 F.3d at 163 *and Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

First, Ybarra argues that the ALJ failed to "appreciate[] the significance" of evidence "obviously demonstrating a serious vascular problem."  Pl. Br. at 7.  However, the ALJ specifically found that Ybarra suffered from the "severe" impairment of vascular disease.  Tr. at 16-17.  The ALJ also considered listings pertaining to the cardiovascular system including 4.11 (chronic venous insufficiency of a lower extremity) and 4.12 (peripheral arterial disease).  Tr. at 17; *see also* 20 C.F.R. § 404 Subpart P, Appendix 1 §§ 4.11, 4.12.  The Court notes that the ALJ thoroughly discussed the medical record relating to all of Ybarra's impairments, including evidence favorable to Ybarra. Tr. at 17-19.  For example, the ALJ noted that on April 7, 2011, Ybarra exhibited "no evidence of peripheral vascular disease," but that on August 24, 2012 displayed "mild arterial occlusive disease in both lower extremities."  Tr. at 18, 19, 205, 253, 255-56. Therefore, the Court finds that the ALJ appropriately considered all of the pertinent cardiovascular evidence and resolved any potential evidentiary conflicts in formulating his RFC.  Ybarra asks this Court to reweigh the evidence and substitute our judgment for that of the Commissioner.  *See Audler*, 501 F.3d at 447.  The Court cannot provide the requested relief.

Similarly, Ybarra contends that the ALJ "failed to give meaningful consideration" to her claims of thoracic discitis and various other disorders of the foot.  Nevertheless, Ybarra acknowledges that the ALJ discussed the relevant evidence for these disorders in his opinion.  Pl. Br. at 7; Tr. at 18-19.  Ybarra cites to no evidence that the ALJ failed to consider and offers no concrete argument explaining how these conditions would change Ybarra's RFC.  Accordingly, the Court finds that substantial evidence supports the

conclusion that the ALJ considered all of Ybarra's impairments, both "severe" and "non-severe," and that any limitations resulting from Ybarra's back or foot were properly integrated into her RFC.

Finally, Ybarra argues that the ALJ failed to adequately address the impact of the use of a cane on Ybarra's work related activities.[8]  Specifically, Ybarra asserts that the ALJ failed to include any specific limitations in his RFC that would logically apply to an individual lifting and carrying objects while using with a cane.  The Court disagrees.  The ALJ's RFC expressly indicated that Ybarra must be able to use a cane for balance. Tr. at 17.  Likewise, the ALJ's hypothetical question to VE Colenburg included the limitation that Ybarra be allowed to use a cane.  Tr. at 37.  Thus, any job matching this hypothetical profile necessarily incorporated the use of a cane.  Because the Grid is not dispositive of Ybarra's disability,[9] the ALJ was required to rely upon VE testimony.  *See Carey*, 230 F.3d at 145.  The Court notes that Ybarra "does not challenge the VE's testimony or the hypothetical posed to the VE and the ALJ did not err in relying on the VE's testimony."  *See Dominio v. Barnhart*, 125 F. App'x 525, 526 (5th Cir. 2005).  Consequently, the Court finds that ALJ properly considered the impact of a cane on Ybarra's ability to work.  *See Zimmerman v. Astrue*, 288 F. App'x 931, 935 (5th Cir. 2008) (finding no error when the VE testified that the use of a cane would not have prevented the claimant from performing the types of jobs consistent with his RFC).

---

[8] Ybarra also claims that medical expert testimony should have been sought to evaluate Ybarra's ability to lift and carry objects while using a cane.  This argument fails for the reasons set forth in Section D.  *See Dominguez*, 286 F. App'x at 186 ("the use and consideration of medical expert testimony is solely within the discretion of the ALJ.").

[9] *See supra* Section F.

Overall, Ybarra has failed to satisfy her burden of proving disability.  Because the relevant evidence could lead a reasonable mind to accept the conclusion that Ybarra is not disabled, the Court finds that the Commissioner's decision is supported by substantial evidence.

## I. Dr. Rivera's RFC Opinion is not Entitled to Controlling Weight

Ybarra contends that if the ALJ had given Dr. Rivera's RFC opinion the proper weight, Ybarra would have been limited to sedentary work and found disabled under Grid Rule 201.17.  *See supra* Section E.  A treating physician's opinion on the nature and severity of a claimant's impairment should be afforded "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2); *Brown v. Astrue*, 344 F. App'x 16, 20 (5th Cir. 2009).  "[W]hen good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony" when such opinions "are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence."  *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994)).

As an initial matter, the Court questions whether Dr. Rivera qualifies as a treating physician for the purposes of assigning "controlling weight."  The Social Security regulations require that a "treating source" have "an ongoing treatment relationship" with the claimant.  20 C.F.R. § 404.1502.  Ybarra must have seen Dr. Rivera "with a frequency consistent with accepted medical practice for the type of treatment and/or

evaluation required for [her] medical condition(s)." *Id.* Ybarra visited Dr. Rivera on only two occasions. Tr. at 253-54. The sole purpose of Dr. Rivera's second examination was to conduct a limitations assessment for the purposes of her disability claim.[10] Tr. at 254; s*ee also* 20 C.F.R. § 404.1502 (if the claimant's relationship with the source is based solely on the need to obtain a report in support of a claim for disability, the source is considered a nontreating source). The Court finds that Ybarra has not established an "ongoing treatment relationship" sufficient to qualify Dr. Rivera as a treating source. *See Hernandez v. Astrue*, 278 F. App'x 333, 338 n.4 (5th Cir. 2008) (finding no "ongoing treatment relationship" when the doctor had only examined the claimant two times during the insured period); *see also Clayborne v. Astrue*, 260 F. App'x 735, 737 (5th Cir. 2008) (finding that isolated visits to different hospitals and clinics do not constitute treating sources). Accordingly, his opinions are not entitled to controlling weight.

Furthermore assuming that Dr. Rivera is a treating physician, "[c]ontrolling weight may be given only . . . to medical opinions." SSR 96-2P, 1996 WL 374188, (July 2, 1996); *see also* 20 C.F.R. § 404.1527(a)(2) (definition of a medical opinion). "Opinions on some issues . . . are not medical opinions." 20 C.F.R. § 404.1527(d). Rather, they are "opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case." *Id.* Because they are not "medical opinions," a

---

[10] The "Medical Release/Physician's Statement" form provided by Texas Health and Human Services and completed by Dr. Rivera states, "The patient named above has applied for benefits with our agency. . . . This patient claims [] disability. Please complete the appropriate parts." Tr. at 254.

physician's statement of disability, opinion on a claimant's ability to work, or RFC assessment are not entitled to any "special significance." *See* 20 C.F.R. § 404.1527(d); 20 C.F.R. § 404.1545(a)(1) (definition of RFC); *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). In Ybarra's brief, Dr. Rivera's opinion is denoted as an "expert assessment[] of Plaintiff's residual functional capacity." Pl. Br. at 6. Dr. Rivera was of the opinion that Ybarra could not lift or carry objects heavier than two pounds for more than two hours per day. Tr. at 254. Dr. Rivera also opined that Ybarra could never lift or carry, sit, stand, walk, climb stairs or ladders, kneel, squat, bend, stoop, push, pull, or use a keyboard. *Id.* However, the Court finds that the ALJ did not err in giving these opinions "little weight" because they are not "medical opinions" entitled to any form of special deference. *See Frank*, 326 F.3d at 620; 20 C.F.R. § 404.1527(d).

To the extent that Dr. Rivera's assessments could be considered a "medical opinion," the ALJ had good cause to assign them little weight. *See Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001) (finding good cause when opinions "are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence."). Dr. Rivera's RFC is brief, conclusory, internally inconsistent, and largely unsupported by the record. Dr. Rivera's limitation that Ybarra only lift two pounds for up to two hours per day is inconsistent with his complete restriction from all lifting and carrying. There is also no evidence that Ybarra has ever had any difficulties involving her upper extremities, yet Dr. Rivera

claims that Ybarra should never push, pull, or even use a keyboard.[11]   Accordingly, the

Court finds that the ALJ had "good cause" to discount this opinion.  *See Newton*, 209

F.3d at 455-56.

**J. Analysis of the *Newton* Factors is Unnecessary**

Ybarra's final point of error contends that the ALJ failed to conduct an analysis of

the 20 C.F.R. § 404.1527(c) factors when assigning the appropriate weight to Dr.

Rivera's opinions.   When rejecting or giving little weight to a treating physician's

opinion, "absent reliable medical evidence from a treating or examining physician

controverting the claimant's treating specialist, an ALJ may reject the opinion of the

treating physician *only* if the ALJ performs a detailed analysis of the treating physician's

views under the criteria set forth in [20 C.F.R. § 404.1527(c)(2)]."[12]   *Newton v. Apfel*,

209 F.3d 448, 453 (5th Cir. 2000) (emphasis in original).   "The plain implication of that

statement is that where there is reliable medical evidence from a treating or examining

physician that controverts the claimant's physician, the detailed inquiry of each factor in

[§ 404.1527(c)] is unnecessary."   *Rollins v. Astrue*, 464 F. App'x 353, 358 (5th Cir.

2012).

As discussed in the previous section, Dr. Rivera's opinions were not medical

opinions entitled to any special deference.   Thus, the ALJ was not required to analyze the

§ 404.1527(c) factors.   *See Frank*, 326 F.3d at 620 ("The factors set out at subsection

---

[11] The Court notes that while Dr. Rivera, a podiatrist, is an "acceptable medical source" for purposes of establishing impairments of the foot and ankle, he offers opinions that appear to be beyond his area of expertise. *See* 20 C.F.R. § 416.913(a)(4).

[12] The original text in *Newton* refers to "the criteria set forth in 20 C.F.R. § 404.1527(d)(2)," but this section has been renumbered without substantive change to 20 C.F.R. § 404.1527(c)(2).

[(c)] apply only to medical opinions, not opinions 'reserved to the Commissioner.'"). Furthermore, Ybarra's reliance on *Newton* is misplaced.  Unlike in *Newton*, the ALJ did not summarily reject the opinion of a treating physician solely based upon the conclusions of a non-examining medical expert.  *See Newton*, 209 F.3d at 458.  Instead, in rejecting Dr. Rivera's opinion, the ALJ relied upon the objective medical evidence (or lack thereof), records indicating that Ybarra's pain was largely under control, and Ybarra's reported activities of daily living.  *See Meyer v. Barnhart*, 163 F. App'x 347, 348 (5th Cir. 2006) (distinguishing *Newton* on similar grounds); *Zimmerman v. Astrue*, 288 F. App'x 931, 935-36 (5th Cir. 2008) (same).  Accordingly, for this additional reason, the Court finds that the ALJ was not required to do a detailed analysis of the § 404.1527(c) factors.

**CONCLUSION**

The record reveals that the ALJ applied the correct legal standards in denying Ybarra's disability benefits.  Substantial evidence supports the determination that Ybarra was not disabled during the relevant time period.  A review of the pleadings and the record on file reflects that there is no genuine issue of material fact in this case, and summary judgment is therefore appropriate.  FED. R. CIV. P. 56(a), (c).  Accordingly, the Court rules that Ybarra's Motion for Summary Judgment is **DENIED** and the Commissioner's Motion for Summary Judgment is **GRANTED**.

SIGNED at HOUSTON, TEXAS on this 14th day of January 2015.


_____
GEORGE C. HANKS, JR.
UNITED STATES MAGISTRATE JUDGE